## EDWARDS v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit.   April 8, 1920.)

No. 1737.

1. **Criminal law** ☞1063(1)—**Motion in arrest not necessary, where error appears on record.**

   The defendant in a criminal case may take advantage of a material defect appearing on the record, though such point was not raised by motion in arrest of judgment.

2. **Larceny** ☞30(1)—**Failure to describe property stolen fatal defect.**

   A count in an indictment charging that defendant did willfully, unlawfully, and feloniously knowingly apply to his own use "certain property of the United States" furnished for the military service, without describing the property, held insufficient to state an offense, under Criminal Code, § 36 (Comp. St. § 10200).

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Charles A. Woods, Judge.

Criminal prosecution by the United States against Perry Edwards. Judgment of conviction, and defendant brings error.   Reversed.

Before PRITCHARD and KNAPP, Circuit Judges, and WADDILL, District Judge.

C. F. Haynsworth and Oscar K. Mauldin, both of Greenville, S. C. (H. J. Haynsworth, of Greenville, S. C., on the brief), for plaintiff in error.

C. G. Wyche, Asst. U. S. Atty., of Greenville, S. C., (J. William Thurmond, U. S. Atty., of Edgefield, S. C., on the brief), for the United States.

PRITCHARD, Circuit Judge.   This was a criminal action tried in the District Court of the United States for the Western District of South Carolina.   The facts may be epitomized as follows:

Early in the year 1919, it was publicly announced that Camp Sevier, located five miles from the city of Greenville, would be abandoned.   Following this there was a general movement of troops from the camp.   The last remaining regiment, the 89th, was removed the latter part of March, leaving only a few guards at the camp site for the protection of government property.

It is insisted by counsel:   That plaintiff in error (defendant below), who was a prosperous farmer, lived on lands adjoining the camp site, and about a half mile distant therefrom.   A part of the land occupied by the 89th belonged to the defendant, having been leased by him to the government.   On this part of the land there was an open shed, in which a few bales of hay were left on the withdrawal of the troops. That he was accustomed to pass several times each week along a road running by this shed.   He had seen the hay, and claimed that he thought it had been abandoned.   That on or about sundown on the evening of April 22, 1919, the defendant, in driving by this open shed, loaded into his wagon six bales of hay.   At this point a guard came

up from behind the shed and asked the defendant about taking the hay. The defendant stated that he thought the hay had been abandoned and offered to return it. The arrest and indictment of the defendant followed.

The following is a copy of the three counts contained in the indictment:

### First Count.

"That heretofore one Perry Edwards, to wit, on the 22d day of April, A. D. 1919, at Camp Sevier, in the county of Greenville, state of South Carolina, Western district of South Carolina, and within the jurisdiction of this court, did willfully, unlawfully, and feloniously steal certain property of the United States, to wit, six bales of hay, of the value of fifteen dollars, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the United States of America."

### Second Count.

"That heretofore one Perry Edwards, to wit, on the 22d day of April, A. D. 1919, at Camp Sevier, in the county of Greenville, state of South Carolina, Western district of South Carolina, and within the jurisdiction of this court, did willfully, unlawfully, and feloniously steal certain property of the United States, to wit, six bales of hay, of the value of fifteen dollars, which said property had theretofore been furnished for the military service of the United States, and was to be used for said military service, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America."

### Third Count.

"That heretofore one Perry Edwards, to wit, on the 22d day of April, A. D. 1919, at Camp Sevier, in the county of Greenville, state of South Carolina, Western District of South Carolina, and within the jurisdiction of this court, willfully, unlawfully, and feloniously did knowingly apply to his own use certain property of the United States, which said property had theretofore been furnished for the military service of the United States, and was to be used for said military service, contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America."

The indictment was drawn under section 9714, Barnes' Fed. Code (Comp. St. § 10200), which reads as follows:

"Whoever shall steal, embezzle, or knowingly apply to his own use, or unlawfully sell, convey, or dispose of any ordinance, arms, ammunition, clothing, sustenance, stores, money, or other property of the United States furnished or to be used for the military or naval service, shall be punished as in the preceding section."

In the first and second counts it is alleged that the defendant "did willfully, unlawfully, and feloniously steal certain properties of the United States, to wit, six bales of hay, of the value of fifteen dollars." In the third count it is alleged that the defendant "willfully, unlawfully, and feloniously did knowingly apply to his own use certain property of the United States, which said property had theretofore been furnished to the military service of the United States, and was to be used for such service."

There was a verdict of not guilty as to the first and second counts, but the jury found the defendant guilty on the third count. This verdict, to say the least, was contradictory and inconsistent. The jury

having disposed of the first and second counts, the only remaining point is as to whether the court erred in the trial as respects the third count.

It is insisted by counsel that the third count charges no offense, and in reply to this proposition counsel for the government insists that this point should have been raised on a motion in arrest of judgment, and therefore it is too late for the court to consider this. However, it is urged we should consider the same under rule 11 (233 Fed. vii, 146 C. C. A. vii), as well as the general practice.

[1] Writs of error lie to correct errors apparent on the record, even though no motion in arrest was filed in the court below. In the case of State v. Rosenblatt, 185 Mo. 114, 83 S. W. 975, it was said:

"Numerous decisions of this court attest that a defendant in a criminal case may take advantage of a material defect apparent of record, though such point be raised for the first time in this court. McGee v. State, 8 Mo. 495; State v. Meyers, 99 Mo. 107, 12 S. W. 516. And if no crime is charged in the indictment, then none is confessed by pleading guilty thereto, and the effect of such a plea only amounts to an admission by record of the truth of whatever is sufficiently alleged in the indictment, and will not prevent the defendant from taking advantage of the defects apparent of record on writ of error. 1 Bish. New Crim. Proc. 795; State v. Levy, 119 Mo. 434, 24 S. W. 1026; Fletcher v. State, 12 Ark. 169; Wharton's Crim. Pl. and Prac. (9th Ed.) § 413; Henderson v. State, 60 Ind. 296; * * * Com. v. Kennedy, 131 Mass. 584."

In Bishop's New Criminal Procedure (2d Edition) vol. 2, p. 1180, under section 1368, it is said:

"*What Errors.*—Except as disclosed in the next section, this writ reaches only errors in the record, not extending to preliminary steps, to what pertains to a plea in abatement, to papers merely on the files, or the like. It is good for an error in the indictment in the verdict, in the sentence, in any other part of the record, or where the statute authorizing the punishment is repealed; in short, after sentence, for whatever would have sustained the motion in arrest before." State v. Van Matre, 49 Mo. 268; Jesse v. State, 28 Miss. 100; Stewart v. State, 13 Ark. 720, 750.

"*Sufficiency of Indictment.*—As a general rule, if an indictment states no offense within the jurisdiction of the court, such defect is fatal at any stage of the proceedings, and is not waived by the failure to take advantage thereof in the trial court, but may be raised for the first time on writ of error or appeal. This would seem eminently proper, because, if it appears that no crime was charged in the indictment, it must follow that the verdict of guilty is no broader than the charge, and does not import any crime whatever, and consequently there is nothing to support the judgment." 2 R. C. L. 88.

The case of Clyatt v. U. S., 197 U. S. 221, 25 Sup. Ct. 432, 49 L. Ed. 726, among other things, contains the following statement, which is very much in point:

"While no motion or request was made that the jury be instructed to find for defendant, and although such a motion is the proper method of presenting the question whether there is evidence to sustain the verdict, yet Wiborg v. United States, 163 U. S. 632, 658, justifies us in examining the question in case a plain error has been committed in a matter so vital to the defendant."

In Teal v. Walker, 111 U. S. 246, 4 Sup. Ct. 422, 28 L. Ed. 415, Mr. Justice Woods, in delivering the opinion of the court, said:

"The writ of error is not taken to reverse the judgment of the court upon the demurrer to the complaint, for that was not a final judgment, but to re-

verse the judgment rendered upon the verdict of the jury. The error, if it be an error, of overruling the demurrer, could have been reviewed on motion in arrest of judgment, and is open to review upon this writ of error. When the declaration fails to state a cause of action, and clearly shows that upon the case as stated the plaintiff cannot recover, and the demurrer of the defendant thereto is overruled, he may answer upon leave and go to trial, without losing the right to have the judgment upon the verdict reviewed for the error in overruling the demurrer. The error is not waived by answer, nor is it cured by verdict. The question, therefore, whether the complaint in this case states facts sufficient to constitute a cause of action, is open for consideration."

In view of the above-stated rule, we think it is clearly established that the defendant in a criminal case may take advantage of a material defect appearing on the record, though such point be raised for the first time in this court.

[2] This count simply alleges that the defendant applied to his own use certain property of the United States government which had theretofore been furnished for military service. There is not a single word to indicate the nature, character, or value of the property thus furnished. In other words, it might have been clothing, horses, hay, or any other kind of property. This charge is too vague and indefinite upon which to deprive one of his liberty.

In the case of United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516, Mr. Justice Field, who wrote the opinion of the court, said:

"The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances. * * * The general, and, with few exceptions, of which the present is not one, the universal, rule on this subject is that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment, or implication, and the charge must be made directly, and not inferentially, or by way of recital."

Upon a second indictment there would be no possible way by which defendant on the face of the record could show the nature of the charge upon which he had already been tried. However, it is urged by the government that the failure to accurately and definitely allege the particular kind of property is a clerical error, which must have been made by the stenographer. We fail to find any evidence that it is the result of a clerical error, and, even if it could be shown that the stenographer had left out the proper words of description, that would afford no reason whatever for sustaining the indictment.

It is insisted by counsel that, inasmuch as there is a specific description of the property alleged to have been taken in the first two counts, such description is sufficient to cure any defect contained in the third count. In certain cases this would be true, but here we simply have an allegation, as we have said, which alleges that defendant

used certain property belonging to the United States; but there is nothing contained in the other counts to indicate that this is the property referred to therein, nor is there any word of description in the last count which could be held to refer to the property contained in the other two counts.

While there are other assignments of error, in view of the conclusion we have reached as to the validity of the indictment, we do not deem it necessary to discuss the same. However, we will say in passing that, even if the indictment had been valid, we would have been impelled to reverse the court below on the merits of the case.

For the reasons stated, the judgment of the lower court is reversed.

KNAPP, Circuit Judge (concurring). When Edwards went to take the hay, he either believed it had been abandoned or he did not so believe. If he believed the hay had been abandoned, the taking was innocent, and he was not guilty of stealing it, or of "knowingly" applying it to his own use. If he did not believe the hay had been abandoned, the taking was felonious, and he was guilty of stealing it. The finding of the jury that he was not guilty of stealing was therefore in effect a finding that he believed the hay had been abandoned, and this left no basis for the charge of applying to his own use. To "knowingly apply to his own use" implies that the property was either stolen by or intrusted to the defendant. Manifestly the hay was not intrusted to him, nor did it come rightfully into his possession, except upon the theory that he believed it had been abandoned. The jury found that he did not steal it, and it follows that he did not commit the offense of which he was convicted.