UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Howell COX,
Defendant-Appellant.

No. 80–7806.

United States Court of Appeals,
Eleventh Circuit.

Dec. 18, 1981.

Rehearing Denied Feb. 11, 1982.

M. A. Marsal, Mobile, Ala., for defendant-appellant.

James E. Wilson, D. Broward Segrest, Asst. U.S. Attys., Montgomery, Ala., for plaintiff-appellee.

Before MORGAN, HILL and KRAVITCH, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellant was named along with various co-defendants in five counts of a nine count indictment returned by a federal grand jury in the Middle District of Alabama. Each of the five counts charged appellant with criminal activity in the performance of his

occupation as Chief, Core Drill and Support Section, United States Army Corps of Engineers, Mobile District. He pled guilty to a misdemeanor count and was fined. At trial, a jury acquitted him of two other counts, one for conspiracy to make and use false statements with the intent to defraud the Army Corps of Engineers, and the other for aiding and abetting the same crime. The substance of these counts involved a practice known as "invoice-splitting," which apparently is used to circumvent established price ceilings when purchasing various goods. The jury convicted appellant on the remaining two counts of conspiring, and committing, conversion of government property valued at over $24,000. These counts involved the repair of a privately owned, but government leased, drilling rig with government repair parts and labor. Appellant now appeals and raises three separate issues. First, he claims that Count Six of the indictment, which charges him with conversion of government property, is fatally defective. Second, he argues that the trial judge prejudiced his defense by making unwarranted remarks to the jury. Finally, he contends that the government's evidence at trial was insufficient to support a guilty verdict on the conversion charges. For the following reasons, we affirm.

 Appellant's first claim on appeal is that Count Six of the indictment, which charges him with conversion of government property, was too vague and indefinite to inform him of the nature of the charge and allow preparation of an adequate defense. Count Six states:

> During the period beginning on or about June 1, 1975, and continuing up to and including the date of the return of this indictment, in the Middle District of Alabama and elsewhere, PAUL MERTINS MURRELL and CHARLES HOWELL COX, defendants herein, willfully and knowingly did embezzle, steal, pur-

loin and convert to the use of another, to wit: Ray Anderson Beasley, the President of Capitol City Supply Company and Capitol City Drilling Company, Montgomery, Alabama, property of the United States of the value of about $24,916.82, which said property had come into the possession and under the care of the said PAUL MERTINS MURRELL and CHARLES HOWELL COX by virtue of their employment as employees of the Mobile District, U.S. Army Corps of Engineers, all in violation of Title 18, United States Code, Section 641.

Appellant's argument focuses on the phrase "property of the United States of the value of about $24,916.82." He contends that the converted property must be described more particularly before the requirements of a valid indictment are satisfied. *See United States v. Meacham*, 626 F.2d 503 (5th Cir. 1980). In support of his argument, appellant relies on several cases where the word "property" in an indictment was held insufficient to apprise a defendant of the nature of the charge. *See Moore v. United States*, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895); *Edwards v. United States*, 266 F. 848 (4th Cir. 1920); *United States v. Linderman*, 20 F.R.D. 459 (D.Mont.1957). We believe, however, that these cases involved entirely different situations and are not controlling here.[1] The validity of an indictment is governed by practical, not technical considerations. A conviction will not be reversed because of minor deficiencies which have not prejudiced the defendant. *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Gordon*, 638 F.2d 886 (5th Cir. 1981); *United States v. Varkonyi*, 645 F.2d 453 (5th Cir. 1981). We are unconvinced that Count Six of this indictment prejudiced appellant in the preparation of his defense. Count Four, the conspiracy charge, clearly described the property and

---

1. In *Linderman*, the property was described only by value without any reference to ownership or location. In *Edwards*, the indictment did not indicate the nature, character, or value of the property. In *Moore*, a critical factor in the court's analysis was the failure of the indictment to allege that the embezzled property had come into the defendant's possession in his capacity as a government employee. *Moore v. United States*, 160 U.S. at 276–77, 16 S.Ct. at 297.

identified it by the same value. The property was again described in detail, and by the value, in Overt Act 13 of Count Four. In a pre-trial discovery conference two months before trial began, appellant was given a detailed list of the items constituting the converted property. Furthermore, we are perplexed as to why appellant never moved for a bill of particulars if he thought the indictment was insufficient. In short, there is no reason to believe that appellant was misled or inadequately informed by the wording of Count Six of this indictment. Therefore, the indictment was not fatally defective.

■ Appellant's second claim on appeal concerns remarks made by the trial judge during cross-examination of a government witness. Although not requested by the government's counsel, the trial judge apparently believed that the following soliloquy was necessary:

Ladies and gentlemen of the jury, there is some indication that if something facilitates actions by the government that that justifies violation of the law or regulations. That is not true. You and I are sworn to abide by the law as it is, not as we may think it ought to be. We elect congressmen, they go up there and they pass laws and they pass laws that they hope will facilitate the doing of business by the government in a proper way. Now, if every employee of the government, including myself and you and you are employees of the government right now, if we are to set ourselves up as the people who decide what ought to be done, as distinguished from what the law requires to be done, then we will have a government that goes off in millions of different directions. Now, regardless of what the law ought to be, we are bound by the law as it is; Mr. Murrell is, other people are. We are sworn, you are sworn and I am sworn to abide by the law as it is, not by the law as I may think it ought to be or as you may think it ought to be. So in listening to the evidence, you can decide about a person's criminal intent by considering what he might think the law ought to be. But when you get down to whether he violated the law, don't forget that the law is put there by people who know more about what is best and who spend months and years studying what is best and we really aren't in a very good position to second-guess them. Our congressmen, in spite of some things that they may be accused of and may do that we may not approve of, they do a wonderful job of passing laws. The running of this government is a very complicated situation and in spite of the fact that you and I and others often run into some law that perhaps would be better in an individual situation if it were different, nonetheless the law is adopted for all of us and these congressmen try to pass laws that bind all of us and we are sworn to live under those laws and you are sworn to enforce them as I state them to you and I am sworn to give them to you as I understand them. If we make a mistake in applying the law, it is recorded here (indicating) and is there for review by a court of more than one judge. So don't worry about what the law ought to be, worry about what the law is in deciding whether or not any law may have been violated.

We realize that a trial judge may speak to the jury at his own discretion. "It is well settled that a federal district judge is not relegated to complete silence and inaction during the course of a criminal jury trial." *Bursten v. United States*, 395 F.2d 976, 982 (5th Cir. 1968). In the exercise of that discretion, however, a trial judge must balance any possible prejudice to the defendant against the jury's need to hear the judge's remarks. Juries are extremely sensitive to every word and intimation given by the judge. *Bursten v. United States*, 395 F.2d at 983; *United States v. Williams*, 473 F.2d 507 (5th Cir. 1973).

■ With this in mind, we conclude that the remarks at issue here were not warranted by the situation. The testimony which the trial judge interrupted concerned "invoice-splitting" and the charges of fraud against the government. One of the defense theories to these charges was lack of

criminal intent. In support of this theory, a defense attorney was trying to establish in cross-examination that "invoice-splitting" actually facilitates the internal workings of the defendant's government duties. Because of the testimony, the trial judge apparently was concerned that the jury would consider what the law should be, instead of what the law is, when making final deliberations. The remarks above were the result of his concern. We believe that the majority of these remarks were unnecessary, improper, and possibly prejudicial. There was no need to remind the jury that they were temporarily employees of the federal government, especially when the United States was the victim and prosecutor of the crime. Nor was it necessary to state that the eventual result of government employees breaking the law would be chaos. We have reversed convictions because of similar remarks. *See United States v. Hill,* 417 F.2d 279 (5th Cir. 1969). Courts also have reversed convictions because the jury was reminded that a higher court would review any possible mistakes. This type of statement tends to dilute the final responsibility and duty of a jury. *See United States v. Fiorito,* 300 F.2d 424 (7th Cir. 1962). However, we conclude that appellant is not entitled to a new trial despite the judge's remarks. The remarks were made in reference to charges on which the appellant was acquitted. We do not believe that the jury would have remained objective toward these charges while allowing the judge's remarks to influence them on unrelated charges. Therefore, any error committed by the judge in making the remarks was harmless. *See United States v. Strickland,* 509 F.2d 273, 277 (5th Cir. 1975).

Finally, appellant contends that the evidence offered at trial was insufficient to support the jury's verdict on the conversion charges. After a careful review of the record, we conclude that the evidence was adequately sufficient to support a conviction. *See United States v. Haggins,* 545 F.2d 1009 (5th Cir. 1977); *United States v. Lonsdale,* 577 F.2d 923 (5th Cir. 1978). Therefore, we affirm on all issues.

AFFIRMED.