**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Albert SORONDO, Defendant–Appellant.**

**No. 87–5520.**

United States Court of Appeals,
Eleventh Circuit.

May 23, 1988.

Theodore J. Sakowitz, Federal Public Defender, Lisa A. Rosenthal, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Robert E. O'Neill, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT and HILL, Circuit Judges, and WARD\*, District Judge.

HILL, Circuit Judge:

In this appeal, the appellant challenges his conviction on charges of distributing and conspiring to distribute cocaine. He attacks the constitutionality of the law under which he was sentenced and the admissibility of certain testimony by a government witness. We reverse.

## I. FACTS

The charges against the appellant, Albert Sorondo, stem from his sale of one kilogram of cocaine to an agent of the Drug Enforcement Administration ("DEA"), David Lorino, and a paid DEA informant, Raphael O'Relly. Appellant does not dispute the facts surrounding the sale. The informant, O'Relly, met with appellant on November 20, 1986 and informed him that he had contacted a person who wanted to buy cocaine. O'Relly told appellant that he needed to obtain twelve kilograms of cocaine. Appellant responded that he would check with some friends about getting the cocaine, and he quoted a price of $16,000 per kilogram.

\* Honorable Horace T. Ward U.S. District Judge for the Northern District of Georgia sitting by designation.

The following day, O'Relly set up a meeting between appellant, agent Lorino, and himself at a Denny's Restaurant. At the meeting, appellant stated that he had been in contact with a friend and that he would be able to supply the cocaine. He also produced a sample of cocaine which agent Lorino field tested in the rest room. Lorino told appellant that he was satisfied with the quality, and the three men left the restaurant. O'Relly and Lorino drove around and waited for appellant, whom they believed had gone to pick up the twelve kilograms of cocaine, to contact them by beeper. Appellant contacted them and told them to meet him at a Holiday Inn. When they arrived at the hotel parking lot, appellant informed O'Relly and Lorino that he had obtained only one kilogram and that the remainder would be supplied in three kilogram increments. He produced the one kilogram and was arrested. After being appropriately informed of his rights, appellant signed a written confession describing the meetings and the transaction.

As noted above, appellant does not contest his involvement in the transaction. Indeed, appellant testified at his trial and described the sale. Rather than dispute his involvement, appellant asserted a defense of entrapment. He argued that O'Relly consistently pressured him until he finally broke down and supplied the cocaine.

Through appellant's testimony and that of his wife, Miriam Sorondo, appellant showed that his relationship with O'Relly began the month prior to the ultimate cocaine sale. O'Relly met appellant at a bowling alley and informed him that he had 25,000 pounds of marijuana in Texas which he wanted appellant to help him sell. Appellant informed O'Relly that he was a musician and that he was not interested in selling drugs, but he did eventually go to Texas. On his first stay in Texas, appellant was taken blindfolded to a location where he saw thousands of pounds of marijuana. At O'Relly's request, appellant made various efforts to sell marijuana to individuals he knew in Miami. Appellant persuaded four people to come to Texas, but was unable to sell any of the drugs.

Appellant returned home to Miami, but then returned to Texas at O'Relly's invitation for a second effort to sell marijuana. Appellant was again unsuccessful.

Appellant and his wife testified that O'Relly and his associates called appellant's home constantly to ask him to participate in drug transactions. According to appellant's testimony, he consistently refused to participate. Appellant testified that O'Relly ultimately agreed to leave him alone if he would perform just one cocaine transaction. Appellant eventually agreed, and the transaction led to his arrest.

At trial, the defense argued that O'Relly was paid a considerable amount of money for his services and that he had a financial motive for pressuring the appellant since he was paid on a case-by-case basis. The jury rejected appellant's entrapment defense, however, and found him guilty of conspiracy to distribute cocaine and distribution of cocaine. He was sentenced to the mandatory minimum sentence of five years under 21 U.S.C. § 841, and he is currently incarcerated.

## II. DISCUSSION

### A. Mandatory Minimum Sentence

■ Appellant maintains a broad-based attack on the constitutionality of the mandatory minimum sentence provisions contained in 21 U.S.C. § 841. As appellant concedes, however, his due process, equal protection, and Eighth Amendment challenges have recently been considered and rejected by this court. *See United States v. Holmes*, 838 F.2d 1175 (11th Cir.1988). Thus, we need not review the bulk of appellant's constitutional attacks.

Appellant does, however, raise an additional constitutional argument which was not addressed in *Holmes*. He claims that he falls into an arbitrary gap established by the mandatory minimum sentence provision. The original provision became effective in October of 1986. Congress subsequently enacted 18 U.S.C. § 3553(e), which provides for mitigation of the mandatory minimum sentence on motion by the government if the defendant was aiding in

the prosecution or investigation of other suspects. The mitigating provision took effect in November of 1987. Appellant claims that individuals charged with crimes occurring during the gap between October of 1986 and November of 1987 are arbitrarily denied the benefit of the mitigating provision. This issue has largely been rendered moot by the Sentencing Act of 1987, Pub.L.No. 100–182, 101 Stat. 1266 (1987), which requires retroactive application of the mitigating provision. Under this provision, Congress has removed the gap. With respect to this appellant's trial, however, the issue is not moot. He was convicted and sentenced before the gap was removed. We are therefore obliged to address the merits of his constitutional attack.

Appellant claims that it is arbitrary and unconstitutional to enact a statute providing for severe minimum sentences while delaying the availability of a mitigating mechanism. The argument is without merit: "where a statute does not discriminate on racial grounds or against a suspect class, Congress' judgment will be sustained in the absence of persuasive evidence that Congress had no reasonable basis for drawing the lines that it did." *Holmes*, 838 F.2d at 1177. According to appellant's argument, Congress could never enact a provision which mitigated the effect of a prior sentencing provision unless the new law was given retroactive effect. That is not the case. The fact that Congress enacted this particular mitigating provision only one year after the original provision, rather than several years later, does not indicate that the series of provisions is arbitrary. Congress is certainly empowered to pass laws which lessen the severity of previous sentencing provisions, and it need not do so retroactively. Thus, appellant's claim that the existence of a "gap" is unconstitutional is without merit.

### B. Inadmissible Testimony

■ Appellant objects to the admission of a portion of testimony given by special agent Peter Sarron, a rebuttal witness for the government. The defense attempted to prove that appellant had been entrapped by O'Relly. Appellant and his wife testified that O'Relly constantly put pressure on him to sell drugs, and evidence was introduced to show that O'Relly was motivated to entrap appellant by large, result-oriented fees. To rebut this defense, the government called agent Sarron to testify as to O'Relly's long-standing cooperation with the DEA and his considerable success. In an effort to justify the large fees paid to O'Relly, the government elicited testimony regarding the number of cases O'Relly had participated in and the amount of money and property which had been forfeited to the government due to his assistance. At one point during Sarron's direct examination, the following exchange took place:

Q. And during that time, how many cases for you has he worked?

A. Oh, he has worked probably fifty or sixty. We made about forty cases that resulted in prosecution and seizures.

Q. Of the forty cases, how many resulted in convictions?

Mr. Dachs: Objection as to relevancy.

The Court: Objection overruled.

The Witness: I can't think of one defendant that we have lost. We have convicted well over a hundred people.

Appellant argues that the testimony regarding the number of convictions obtained with O'Relly's assistance was unfairly prejudicial and inadmissible. We agree.

■ As an initial matter, the record shows that defense counsel objected to this testimony only on the grounds of relevance. As the district court indicated by overruling this objection, the testimony was relevant. It was related to the government's attempt to establish O'Relly's value to the DEA and, more importantly, it bore directly on O'Relly's ability as an informant and his credibility as a witness. Thus, defense counsel's objection was properly overruled.

■ On appeal, we may only take note of appellant's additional objections to the extent that the admission of this testimony rises to the level of plain error. Fed.R. Crim.P. 52(b). "The purpose of the plain error rule is to enforce the requirement that parties object to errors at trial in a

timely manner so as to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of reversal." *United States v. Chaney*, 662 F.2d 1148, 1151 n. 4 (5th Cir. Unit B 1981). *See also United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). Given this purpose, it is clear that the plain error rule must apply when, as here, a party states an inaccurate objection just as when a party states no objection at all. In either case, the trial judge is not given a proper opportunity to correct or avoid the error. In the present case, we must therefore determine whether the admission of agent Sarron's testimony regarding the number of convictions obtained with O'Relly's assistance constitutes plain error. We conclude that it does.

The plain error standard is difficult to meet: "[p]lain error consists of error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity and public reputation of judicial proceedings." *United States v. Russell*, 703 F.2d 1243, 1248 (11th Cir.1983). The Supreme Court has suggested that this standard provides appellate courts with the power to prevent miscarriages of justice. *Frady*, 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14. It is this high standard which we apply in the present case.

▮ On direct examination, agent Sarron told the jury that O'Relly's assistance had led to the conviction of well over one hundred other defendants. In effect, the jury was told that a large number of other juries had found O'Relly to be a credible witness and that those juries had never returned a verdict of not guilty when O'Relly was involved in the case. This is extremely prejudicial testimony. A jury has an obligation to "exercise its untrammeled judgment upon the worth and weight of testimony" and to "bring in its verdict and not someone else's." *United States v. Johnson*, 319 U.S. 503, 519, 63 S.Ct. 1233, 1241, 87 L.Ed. 1546 (1943). To ensure that a jury does not abrogate this responsibility, a trial judge must be sensitive to the jury's temptation to allow the judgment of another authority to substitute for its own. Thus, a trial judge is required scrupulously to avoid expressing or implying his or her own opinion on the merits of the case or the weight of particular evidence, lest the jury substitute the trial judge's opinion for its own. *See United States v. Cox*, 664 F.2d 257, 259 (11th Cir.1981). Similarly, the judge must protect against the danger that a jury will accept the judgment of an expert in place of its own. *See United States v. Barnette*, 800 F.2d 1558, 1569 (11th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987). We conclude that precisely the same danger is present when the jury is informed of the results of numerous other trials in which a central witness for the government has participated. The jury will unavoidably be tempted to accept the opinion of previous juries rather than exercise its own independent judgment.

Agent Sarron's testimony in the present case created a great danger that the jury would simply credit O'Relly's testimony and find in favor of the government because many other juries had done so in the past. This would clearly be an improper basis for the verdict, and we conclude that the danger of unfair prejudice from this testimony substantially outweighed the testimony's probative value. It should, therefore, have been excluded under Fed.R.Evid. 403.

▮ The government argues that the prejudice here is slight and that any error was harmless. We cannot agree. O'Relly was the government's first witness. He described his contact with Sorondo and specifically contradicted the defense's description of O'Relly's pressure tactics. Sorondo testified that he initially told O'Relly that he was not interested in selling cocaine, but O'Relly testified that that was not true. Sorondo testified that O'Relly agreed to leave him alone if he would perform just one cocaine transaction, but O'Relly denied this. Mrs. Sorondo testified that O'Relly had spoken to her on a number of occasions about her husband getting involved in drug transactions, but O'Relly denied that any such conversations occurred. The record

**950**

clearly shows that O'Relly's testimony supported the government's position on the critical issue of entrapment. Given the significance of O'Relly's testimony, it was plain error to allow testimony by agent Sarron which may have unfairly and strongly bolstered O'Relly's credibility in the eyes of the jury. Based upon this plain error in the trial, appellant's conviction must be reversed.[1]

### III. CONCLUSION

For the foregoing reasons, appellant's conviction in the district court is

REVERSED.

---

**1.** Given our resolution of the case, we need not address appellant's additional claim that the government violated the Jencks Act, 18 U.S.C. § 3500.

