**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Simon GABAY, Defendant–Appellant.**

**Nos. 89–6059, 89–6061.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 21, 1991.

Jay R. Moskowitz, Coconut Grove, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Mayra R. Lichter, Linda C. Hertz, Judith Kozlowski and Lynne W. Lamprecht, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and PECK *, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellant, Simon Gabay ("Gabay") appeals his convictions by a jury of counterfeiting traveler's checks (violation of 18 U.S.C. § 371 and § 513) and bond jumping (violation of 18 U.S.C. § 3146(a)(1) and § 401(3)).[1] On appeal, Gabay asserts numerous challenges to his convictions including: (1) the joinder of his two indictments for counterfeiting and bond jumping caused undue prejudice; (2) the admission

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. The indictment for bond jumping included a charge for bond jumping (violation of 18 U.S.C. § 3146(a)(1)) and a charge for criminal contempt (violation of 18 U.S.C. § 401(3)). Gabay was found guilty on both counts. The district court merged the two counts, so Gabay was sentenced only for criminal contempt.

of the transcript of the prior testimony of a deceased witness was improper since Gabay was unable to cross-examine; (3) a government witness's improper reference to Gabay's silence constituted reversible error; (4) an aura of prejudice denied him a fair trial; (5) the trial court erred in allowing deliberations and verdict by an eleven-member jury without full inquiry; and (6) a sentence of 60–months on the charge of criminal contempt was outside the bounds of the sentencing guidelines and unreasonable. We find these claims without merit, and, accordingly, affirm Gabay's convictions and sentences.

## I. BACKGROUND

Gabay was the coordinator of a group that manufactured and attempted to distribute nearly $40 million of counterfeit traveler's checks. Gabay and nine others were arrested after selling over $1 million in counterfeit traveler's checks to an undercover officer. Eight of the defendants pled guilty prior to trial and entered into cooperation agreements with the government. Gabay and codefendant, Lawrence Schmalholz, were set to proceed to trial on February 21, 1989. Shortly before trial, Gabay fled.[2] Gabay left behind a videotape explaining the reasons for his flight. On March 9, 1989, Gabay was found in a luxury apartment in Venezuela, hiding in a bookcase. Subsequently, he was indicted for bond jumping. On June 12, 1989, the district court joined the indictments and Gabay proceeded to trial on the counterfeiting and bond jumping charges.

Soon after jury deliberations commenced, the district court halted them and held a hearing regarding possible juror misconduct. Based on the evidence presented at the hearing, the district court concluded one juror had disobeyed the oath not to speak about the case or form an opinion regarding Gabay's guilt. The district court, therefore, dismissed the juror and, over a defense objection, continued the deliberations with eleven jurors. A motion for a new trial on this issue was denied. Following the two-week jury trial, Gabay was found guilty of the counterfeiting and

bond jumping charges. After a lengthy sentencing hearing, Gabay was sentenced to 111 months in prison, consisting of 51 months incarceration for the counterfeiting conviction, and 60 months incarceration for criminal contempt on the bond jumping conviction, to be served consecutively.

## II. DISCUSSION

### A. *Joinder*

Under Rule 13 of the Fed.R.Crim.P., the trial court may order two indictments tried together if the two offenses could have been joined in a single indictment. Whether substantive and bond jumping offenses may be joined is a question of first impression in this circuit. Those circuits which have addressed the question have held that those charges may be joined for trial under the proper circumstances. *United States v. Peoples,* 748 F.2d 934 (4th Cir.1984), *cert. denied,* 471 U.S. 1067, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); *United States v. Ritch,* 583 F.2d 1179 (1st Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978); *United States v. Bourassa,* 411 F.2d 69 (10th Cir.), *cert. denied,* 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969). We agree with these circuits, and find that joinder of Gabay's counterfeiting and bond jumping indictments was permissible under the circumstances of this case.

This court undertakes a two-step inquiry to determine whether separate charges were properly tried at the same time. First, the government must demonstrate that the initial joinder of the offenses was proper under Fed.R.Crim.P. 8. Next, we must determine whether the trial court abused its discretion by refusing to order a severance under Fed.R.Crim.P. 14. *United States v. Montes–Cardenas,* 746 F.2d 771, 776 (11th Cir.1984).

Offenses may be joined if they are based on "two or more acts or transactions connected together or constituting part of a common scheme or plan." (Fed. R.Crim.P. 8(a)). Bond jumping and the underlying offense are "connected together"

---

**2.** The trial of Mr. Schmalholz was conducted as scheduled and resulted in a verdict of not guilty.

One of the government's witnesses was Saul Rubin, who died shortly after the trial.

if they are related in time, the motive for flight was avoidance of prosecution of the underlying offense, and custody derived directly from the underlying offense. *Ritch,* 583 F.2d at 1181. Gabay absconded soon after his arrest for counterfeiting, the counterfeiting led directly to his custody, and by his own admissions (made in a videotape left behind for the court), his motive for flight was directly related to his impending prosecution for counterfeiting.

Gabay argues that while substantive offenses and flight offenses may be joined under some circumstances, severance was warranted in this case based upon Rule 14 considerations. He also argues that joinder of the substantive and flight offenses was unduly prejudicial.

■■ Unfair prejudice does not result when two offenses are joined if evidence admissible to prove each offense is also admissible to prove the other offense. *Peoples,* 748 F.2d at 936. Gabay fails to establish unfair prejudice since evidence of flight is admissible to prove guilty conscience and evidence of the counterfeiting is admissible to prove the motive for the flight. *Id.*

### B. *Deceased Witness's Testimony*

■ A witness named Saul Rubin testified in February 1989 on behalf of the government at the trial of Gabay's codefendant, Lawrence Schmalholz. Rubin then died in May of 1989. Rubin testified that he owned a book bindery and that he cut the sheets of traveler's checks to check size and then stored them in his shop until Gabay picked them up. The transcript of Rubin's testimony was admitted and read to the jury pursuant to Fed.R.Evid. 804(b)(3) & (5). Gabay contends that the admission of Rubin's testimony was error. Determinations regarding the admissibility of evidence are within the discretion of the district court and should not be reversed absent an abuse of discretion. *United States v. Collins,* 779 F.2d 1520, 1531 (11th Cir.1986).

■ Fed.R.Evid. 804(b)(3) permits the introduction, upon demonstrating the unavailability of the declarant, of statements contrary to the penal interest of the declarant.

There is no question that the declarant was unavailable since the witness was dead. The statements of an unavailable declarant are deemed against penal interests under Rule 804(b)(3) where the statements so tend to subject the declarant to criminal liability "that a reasonable man in his position would not have made the statement unless he believed it to be true." In applying this objective standard, the Advisory Committee Notes to Rule 804 instruct that whether "a statement is in fact against interest must be determined from the circumstances of each case." 56 F.R.D. 183, 328 (1972).

Gabay suggests that the statements were not truly against Rubin's interests because, by being granted immunity and cooperating with the investigation, Rubin avoided the filing of criminal charges against him. Precise examination of the content of Rubin's statement and the circumstances leading to its making refutes Gabay's contention that the statement does not fit within the "against penal interest" exception to the hearsay rule.

Courts closely examine the circumstances under which statements are made by codefendants or accomplices to determine whether they are truly against penal interests. *See, United States v. Gonzalez,* 559 F.2d 1271, 1273 (5th Cir.1977).[3] The rationale for this finer level of scrutiny in criminal cases is the fear that the declarant may be acting out of a strong motive to exonerate himself by misrepresenting his own role and degree of culpability and attempting to shift a portion of the blame upon the codefendant. *Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986). Yet, the very content of Rubin's statement repudiates any motive to shift blame or distort Gabay's degree of culpability. The testimony read to the jury

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

clearly and directly implicated the declarant in criminal conduct. Absent a showing of circumstances presenting obvious motives for falsification, the trial court's decision to admit the testimony of a deceased witness will not be disturbed. We find no abuse of discretion by the district court in admitting Rubin's transcript testimony.

## C. *Right To Silence*

Gabay's case agent testified at trial that shortly after Gabay's arrest, Gabay was asked some questions which he agreed to answer. The case agent explained that after answering several questions, Gabay stated that he did not want to answer any more questions. A side-bar discussion immediately followed, and the jury was instructed to disregard the statement that Gabay did not want to speak further with the agent. Gabay moved for a mistrial and his motion was denied.

Gabay now argues that this reference to his silence, in front of the jury, entitles him to a new trial. He asserts it is fundamentally unfair to simultaneously afford a suspect a constitutional right to silence following arrest and yet allow implications of that silence to be used against him. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Rosenthal,* 793 F.2d 1214, 1243 (11th Cir.1986).

To warrant a new trial, an improper prosecutorial comment must be so pronounced as to permeate the entire atmosphere of the trial and not be cured by an instruction by the district judge. *United States v. Creamer,* 721 F.2d 342, 345 (11th Cir.1983); *United States v. Reed,* 887 F.2d 1398, 1402 (11th Cir.1989). The trial court's prompt admonishment of the jury to disregard the improper testimony of the agent served to cure the error. *United States v. Holman,* 680 F.2d 1340, 1352 (11th Cir.1982). The strong evidence of Gabay's guilt, combined with the trial court's prompt curative instructions, reduced the agent's testimony, even if improper, to harmless error. *Creamer,* 721 F.2d at 345.

## D. *Aura Of Prejudice*

Gabay seeks reversal because he claims his trial was conducted in an aura of prejudice. The trial lasted a little more than two weeks and consisted of seventeen volumes of trial record, yet Gabay can point to only one specific comment from the trial court which he says unduly prejudiced him.[4]

This court held in *United States v. Sorondo,* 845 F.2d 945, 949 (11th Cir.1988), and *United States v. Cox,* 664 F.2d 257, 259 (11th Cir.1981), that the trial court cannot interject his or her opinion because a "jury has an obligation to 'exercise its untrammeled judgment upon the worth and weight of testimony,' and to 'bring in its verdict and not someone else's.' " *Sorondo,* 845 F.2d at 949, (quoting, *United States v. Johnson,* 319 U.S. 503, 519, 63 S.Ct. 1233, 1241, 87 L.Ed. 1546 (1943)). No opinion was expressed in this case by the trial court regarding any piece of evidence, nor was any comment made by the court about the testimony of any witness. There is nothing in the court's comments from which a jury could substitute the court's opinion for that of the jury's.

A trial court has broad discretion in handling a trial and an appellate court will not intervene absent a clear showing of abuse. *United States v. Gomez–Rojas,* 507 F.2d 1213, 1223 (5th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). We think it is clear from a review of the record in this case that there was nothing in the trial court's comments that was so obtrusive or prejudicial that it denied Gabay a fair trial.

## E. *Eleven Jurors*

At the close of the two-week trial, and approximately one hour after the jury began its deliberations, defense counsel was informed by a lawyer unrelated to the case that one of the jurors had expressed an opinion about Gabay's guilt during a four-day hiatus in the trial. The juror's opinions were rendered prior to the end of the government's case and before the start of the jury's deliberations.

---

**4.** At one point in the trial the district court asked defense counsel, "Who is the next in the cast of character witnesses?" [R13–36].

As soon as the court was notified of the juror's violation of her duty not to discuss the case with anyone, the court ordered the deliberations to cease. At that point, the jury had deliberated for less than two hours. The court held a hearing to make an inquiry into the possible juror misconduct. The juror's work-place supervisor and two colleagues testified that during the break in the trial, the juror told them certain facts about the case, including her feelings about Gabay's guilt.[5]

After conducting this inquiry, the court requested the tainted juror, outside the presence of the other jurors, to answer certain questions about whether she discussed the case with anyone prior to the commencement of jury deliberations. She denied doing so.

The court, then concerned about whether the juror had expressed her opinion as to Gabay's guilt, or any other matters, to any other juror prior to deliberations, made an inquiry of each juror. The jurors' names were selected randomly and each was individually questioned in open court by the court, defense counsel, and the government while the other jurors waited in the jury room. The inquest consisted of asking each of the jurors whether or not he/she had any discussions with anyone concerning the case prior to the start of deliberations.

The jurors were also asked with which jurors they ate lunch or socialized during the trial. If any of the jurors replied that they ate lunch with or socialized with the tainted juror, the court further investigated whether or not the tainted juror had expressed to them any opinion as to the guilt

or innocence of Gabay or whether they had discussed the case with her or anyone else prior to the beginning of deliberations. The court carefully inquired of each juror and made a determination that no juror had been influenced in any way in his or her deliberations by anything said by the tainted juror.[6] The tainted juror was excused and jury deliberations continued with eleven jurors pursuant to Rule 23(b).[7]

Gabay is essentially making two claims: 1) there was juror misconduct of such a prejudicial nature and of such magnitude that a new trial is warranted; and 2) the trial judge did not show good cause to continue the trial with only eleven jurors.

1. Juror Misconduct

Following the procedures outlined in *United States v. Yonn*, 702 F.2d 1341 (11th Cir.), *cert. denied*, 464 U.S. 917, 104 S.Ct. 283, 78 L.Ed.2d 261 (1983), the trial court interviewed each juror individually, reassured the jurors and refrained from commenting on the incidents in question, and requested that each juror refrain from discussing the court's questions with anyone. The trial court obtained the pledges of those jurors who had spoken with the tainted juror, that none of her comments had interfered with their ability to render a fair and impartial verdict. *Yonn*, 702 F.2d at 1345. The trial court further instructed the jurors not to discuss the voir dire among themselves. Finally, the trial court re-obtained pledges from the remaining jurors to deliberate and base their verdicts solely on the evidence, based on the court's instructions of the law.

The district court found the jury able to deliberate fairly after its voir dire, its cura-

---

5. The work supervisor testified that the juror had said Gabay was guilty. The supervisor then brought these comments to the attention of the lawyer who contacted Gabay's counsel. The juror's colleagues testified that the juror told them someone in the case had a baby blue Rolls Royce and that she had learned the difference between real and counterfeit traveler's checks because she had felt the counterfeit checks.

6. The portrait of the juror which emerged from the inquest was of a person who appeared flighty and not taken seriously by her work colleagues or fellow jurors.

7. Fed.R.Crim.P. 23(b) states:

Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences. Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

tive instructions, its daily observation of the jurors for several weeks, and the jurors' unequivocal pledges to deliberate fairly. The "determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge." *Ristaino v. Ross,* 424 U.S. 589, 594–95, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976) (quoting, *Rideau v. Louisiana,* 373 U.S. 723, 733, 83 S.Ct. 1417, 1422, 10 L.Ed.2d 663 (1963)); *Owens v. Wainwright,* 698 F.2d 1111, 1113 (11th Cir. 1983), *cert. denied,* 464 U.S. 834, 104 S.Ct. 117, 78 L.Ed.2d 116 (1984) ("Appellate courts reviewing a cold record give particular deference to credibility determinations of a fact finder who had the opportunity to see live testimony.").

The trial court's careful and lengthy investigation of the juror misconduct issue put that court in the best position to determine whether or not any juror misconduct deprived Gabay of his due process right to a fair trial. We are persuaded that the trial court properly exercised its discretion in finding that Gabay received a fair trial void of any prejudicial juror misconduct.

### 2. Eleven Jurors

Gabay argues that the trial court did not have "just cause" to continue the jury deliberations with only eleven jurors. Gabay misreads the standard enunciated by Rule 23(b). The rule explains that "if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider a verdict, *in the discretion of the court* a verdict may be returned by the remaining 11 jurors." (Emphasis added.) It is clear that there must be just cause to excuse the juror, but that issue does not need to be decided by this court. Neither party argues that the trial court did not have "just cause" to remove the juror,[8] therefore, our review is limited to whether the trial court

abused its discretion in continuing the deliberations with eleven jurors.

Rule 23(b) was amended in 1983 to remedy the problem we have here in which, "after the jury has retired to consider its verdict and any alternate jurors have been discharged, one of the jurors has been found to be seriously incapacitated or otherwise found to be unable to continue services upon the jury." *Notes of Committee on the Judiciary,* Senate Report No. 95–354, U.S.Code Cong. & Admin.News 1977, p. 527. Amendments Proposed by the Supreme Court.

This court has not ruled on the constitutionality of the discretionary aspect of Rule 23(b).[9] Those circuits that have ruled have concluded that Rule 23(b) is constitutional. *United States v. Stratton,* 779 F.2d 820 (2nd Cir.1985), *cert. denied,* 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986); *United States v. Smith,* 789 F.2d 196 (3rd Cir.1986). We agree with these courts that Rule 23(b) is constitutional. It is clear that under appropriate circumstances twelve-member juries are not required. *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

It is not an abuse of discretion for the trial court to continue deliberations with eleven jurors when a juror becomes unavailable after a lengthy trial and a mistrial would be burdensome. In the present case, the trial court's reasons for continuing the deliberations included a trial of long duration, numerous exhibits, and numerous witnesses.[10] There is no question that a declaration of a mistrial would have necessitated a second expenditure of substantial prosecution, defense and court resources; the outcome Rule 23(b) was designed to alleviate. Accordingly, we conclude the district court was well within its discretion in allowing deliberations to continue with eleven jurors.

---

**8.** When the court held its hearing to determine whether the tainted juror should be removed, counsel for Gabay insisted that there was just cause. He asserted, "We cannot leave that woman on the jury. You can't its clear." [R16–1623]

**9.** This court in *United States v. Wilson,* 894 F.2d 1245 (11th Cir.1990), affirmed a district court's decision in which a juror was dismissed under

Rule 23(b). The court failed to rule on the constitutionality of the rule since the arguments were first raised on appeal. *Cotton v. U.S. Pipe & Foundry Co.,* 856 F.2d 158, 162 (11th Cir.1988) (Claims not raised in the trial court may not be raised for the first time on appeal).

**10.** The trial consisted of over 50 exhibits, over 20 witnesses, and over 100 hours of trial time.

## F. Sentencing

The district court sentenced Gabay to 51 months in prison for the counterfeit charges and 60 months for the criminal contempt charge. Gabay accepts the 51–month term for counterfeiting but objects to the 60–month term for criminal contempt on the grounds that it was outside the bounds established by the sentencing guidelines, and it was unreasonable.

Our review of the sentence imposed by the district court is governed by 18 U.S.C. § 3742(d) and (e):

(d) Consideration.—Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the range of the applicable sentencing guideline, and is unreasonable, having regard for—

(A) the factors to be considered in imposing a sentence, as set forth in Chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provision of section 3553(c); or

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous.

(e) Decision and disposition

If the court of appeals determines that the sentence—

(1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(2) is outside the range of the applicable sentencing guideline and is unreasonable or was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable for the conclusions and . . .

it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate.

(3) is not described in paragraph (1) or (2), it shall affirm the sentence.

 As the Fifth Circuit expressed, "Under these provisions, the characterization of the alleged sentencing error is critical." *United States v. Mejia–Orosco*, 867 F.2d 216, 218 (5th Cir.1989), *cert. denied*, ⸺ U.S. ⸺, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). A sentence imposed "for which there is no applicable sentencing guideline" will be reversed only if it is plainly unreasonable. 18 U.S.C. § 3742(e)(2). On the other hand, a sentence "imposed as a result of an incorrect application of the sentencing guidelines" must be reversed even if reasonable. 18 U.S.C. § 3742(e)(2). Findings of fact that underlie the district court's sentence are reviewed under a clearly erroneous standard. 18 U.S.C. § 3742(d).

 In the case before us, Gabay was convicted of criminal contempt. Within the scope of the sentencing guidelines, the guideline applicable to criminal contempt (18 U.S.C. § 401) is § 2J1.1.[11] That provision stated, "the court shall impose a sentence based on stated reasons and the purpose for sentencing set forth in 18 U.S.C. § 3553(a)(2)."[12]

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

---

**11.** This section was amended effective November 1, 1989. The amended language was not given retroactive affect, and thus, is not considered for purposes of this opinion. Gabay was originally sentenced on September 25, 1989.

**12.** Section 3553(a)(2) reads as follows:
(2) the need for the sentence imposed—

The *Application Note* to § 2J1.1 expounds:

> Because misconduct constituting contempt varies significantly and the nature of the contemptuous conduct, the circumstances under which the contempt was committed, the effect the misconduct has on the administration of justice, and the need to vindicate the authority of the court are highly context-dependent, the commission has not provided a specific guideline for this offense. *See*, however, § 2X5.1.

Section 2X5.1 instructs the district court to look to analogous guidelines.[13] The district court reported during the sentencing hearing that, "there is no analogous guideline and the court must base its sentence on the reasons and purposes as set forth in section 2(J)1.1 of the guidelines, and the court has considered the commission notes that misconduct constituting contempt varies significantly." Gabay argues that § 2J1.6, *Failure to Appear by Defendant*, is an analogous guideline. Whether a guideline is or is not analogous to a defendant's criminal activity is a question of law. Therefore, this court reviews the district court's finding de novo. The trial court determined that Gabay's actions were much more abhorrent than just failing to appear.[14] We do not find the trial court's determination to be erroneous. The videotape, the extensive effort required for recapture, and the fact that Gabay's flight resulted in two trials,[15] are sufficient aggravating circumstances to find that this was not a simple "failure to appear."

The question still remains before this court whether the 60 months sentence for contempt was proper. Since there is no applicable sentencing guideline, we will only reverse the trial court if the sentence imposed is "plainly unreasonable." 18 U.S.C. § 3742(e)(2). It is clear from the trial court's finding of facts that Gabay displayed a tremendous level of contempt for the court and the federal criminal process. We are therefore persuaded that the sentence of 60 months for criminal contempt was not "plainly unreasonable."

In conclusion, Gabay's convictions and sentences are AFFIRMED.

---

(D) to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

13. The wording of Section 2X5.1 is as follows: If the offense is a felony or Class A misdemeanor for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficient analogous guideline, the provisions of 18 U.S.C. § 3553(b) shall control.
 Section 3553(b) provides as follows, "In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in [18 U.S.C. § 3553] subsection (a)(2)."

14. The trial court concluded:
 [The] extensive aggravating factors in your case, including but not limited to the videotape that you sent to the court in which you recite all the reasons you are not appearing for trial, none of which were acceptable to the court, merely were self-serving statements and demonstrated no respect for authority nor the court system.
 Also, considering the extensive efforts that were necessary in order to have you appear in court and that you willfully and deliberately disobeyed a court order to appear when summoned to court.... [R17–45, 46]

15. The trial of Gabay's codefendant, Mr. Schmalholz, and Gabay's own trial.