[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 22, 2011
JOHN LEY
CLERK

No. 09-15311
Non-Argument Calendar
_____

D.C. Docket No. 09-00040-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID ALLEN GIRARD,
a.k.a. David A. Girard,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 22, 2011)

Before HULL, WILSON, and BLACK, Circuit Judges.

PER CURIAM:

After pleading guilty, David Allen Girard appeals his 195-month total

sentence for one count of using a computer to attempt to persuade a minor to engage in sexual activity, in violation of 18 U.S.C. §§ 2422(b) and 2426, and one count of traveling in interstate commerce to engage in sexual conduct with a minor, in violation of 18 U.S.C. §§ 2423(b) and 2426. After review, we affirm.

## I. BACKGROUND FACTS

### A. Offense Conduct

In 2009, a police officer posed on the Internet as a teenage boy using the screen name "Caleb94infl." The officer posted a profile indicating that he was fourteen years old, had lived in foster homes and was unhappy. Shortly after entering an Internet chat room, the officer encountered Defendant Girard, using the screen name "Onestep99."

For approximately an hour and 45 minutes, Defendant Girard chatted with "Caleb94infl," discussing sexual activity and arranging to meet at a nearby Dairy Queen to engage in sex. About thirty minutes later, Girard arrived at the Dairy Queen and was arrested. Girard admitted that he was "Onestep99," that he had intended to meet a fourteen-year-old boy and that he probably would have engaged in sexual relations with the boy.

During a subsequent search of Defendant Girard's residence, officers discovered that Girard's computer was equipped with programs to clean traces of

2

online activity and to encrypt data.  No child or adult pornography was found on

Girard's computer.  However, forensic analysis revealed that Girard had viewed

Caleb94infl's Internet profile shortly after the officer entered the chat room.

## B.    Plea Agreement

Defendant Girard pled guilty pursuant to a written plea agreement.  In

exchange for Girard's guilty plea, the government agreed not to recommend a

specific sentence, but reserved the right to present evidence and make arguments as

to the application of the guidelines and the 18 U.S.C. § 3553(a) factors, as follows:

> The United States Attorney agrees not to recommend a specific sentence.  However, the United States Attorney does reserve the right to advise the District Court and any other authorities of its version of the circumstances surrounding the commission of the offenses by **DAVID ALLEN GIRARD**, including correcting any misstatements by defendant or defendant's attorney, and reserves the right to present evidence and make arguments pertaining to the application of the sentencing guidelines and the considerations set forth in Title 18, United States Code, Section 3553(a).

In addition, the parties reserved the right to appeal any sentence imposed.

## C.    Presentence Investigation Report

The presentence investigation report ("PSI") calculated a total offense level

of 29, which included, inter alia, a two-level increase, pursuant to U.S.S.G.

§ 3A1.1(b)(1), because Girard knew or should have known that the victim of the

offense was unusually vulnerable.[1]  The PSI noted that: (1) the undercover officer's online profile indicated that the fourteen-year-old boy was living in a foster home and had "been bounced around most of [his] life"; (2) the "victim's unstable home environment would make him an unusually vulnerable victim"; and Girard had "a history of exploiting similar circumstances. (see paragraphs 39 and 40)."

Paragraphs 39 and 40 of the PSI indicated that, at the time of Girard's arrest, he was on probation for a 2001 conviction for possession of child pornography. During the course of the 2001 investigation, law enforcement learned that Girard had made contact with a seventeen-year-old boy in an Internet chat room and wired the boy money for a bus ticket to visit Girard's residence.  The boy stayed at Girard's home for several days.  Girard admitted he knew the boy was a minor and wanted to help the boy, who was having problems at home.  As a result, Girard was separately charged with, and pled guilty to, contributing to the delinquency of a minor.

---

[1]Section 3A1.1(b)(1) provides that: "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by **2** levels." U.S.S.G. § 3A1.1(b)(1).  A vulnerable victim is one who is the victim of the offense of conviction (or relevant conduct) "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." Id. § 3A1.1, cmt. n.2.

4

For the 2001 child pornography offense, the state court imposed a ten-year sentence and split the sentence between three months in jail and sixteen months' home confinement, with five years' probation. For the 2001 contributing to the delinquency of a minor offense, Girard was given a one-year suspended sentence, with two years' probation. As a condition of his probation on the child pornography conviction, Girard was not allowed to have Internet access or contact with minors and was required to register as a sex offender.

With a total offense level of 29 and a criminal history category of III, the PSI recommended an advisory guidelines range of 108 to 135 months' imprisonment. Because the statutory mandatory minimum sentence was ten years' imprisonment, the range became 120 to 135 months. See U.S.S.G. § 5G1.1(c)(2). The PSI noted that if, pursuant to the commentary to U.S.S.G. § 3A1.1, Girard knew or should have known that a victim of the offense was a vulnerable victim, and his criminal history included a prior sentence for an offense involving a vulnerable victim, an upward departure may be warranted.[2] Neither party objected to the PSI.

D.     Government's Letter to Probation Office

_____

[2]The commentary to § 3A1.1 states that "[i]f an enhancement from subsection (b) applies and the defendant's criminal history includes a prior sentence for an offense that involved the selection of a vulnerable victim, an upward departure may be warranted." U.S.S.G. § 3A1.1, cmt. n.4.

After the PSI was released, but before sentencing, the government sent a letter to the probation office stating that: (1) an upward departure pursuant to U.S.S.G. § 3A1.1(b)(1), cmt. n.4 was appropriate because Girard exhibited "a penchant for young 'troubled' boys who come from unstable family environments"; and (2) in light of the § 3553(a) factors, an upward variance from the 120-to-135-month guidelines range was appropriate because Girard traveled between states to engage in sexual acts with a troubled youth and previously exploited children.

## E.    Sentencing Hearing

At sentencing, the parties confirmed they had no objections to the PSI. The district court confirmed the PSI's guidelines calculations and the advisory guidelines range of 120 to 135 months.

In mitigation, Girard argued that, due to a work-related accident in the fall of 2001, which crushed his foot, he took various medications to control the pain that also affected his ability to control impulses. In response, the government noted that Girard's January 2001 arrest for the child pornography and contributing to a minor's delinquency offenses, which showed his "penchant for children," predated his injury.

The government stated that there were two possible bases for imposing a sentence above the advisory guidelines range—an upward departure under § 3A1.1(b)(1) and an upward variance based on the 18 U.S.C. § 3553(a) factors. The government submitted a copy of the undercover officer's online profile, the Internet chat between Girard and the officer posing as "Caleb94infl" and certified copies of records relating to Girard's prior 2001 convictions.

The online profile showed a picture of a teenage boy and stated that the boy's name was Caleb and he was "14 years old." According to Caleb's profile, his "life basically SUX," he was in a foster home, he had "been bounced around most of [his] life," did not have many friends and "had to grow up quick." The chat transcript showed that Girard quickly steered the conversation with Caleb toward sex, asked whether Caleb wanted to meet to engage in sexual acts and arranged to meet Caleb within thirty minutes behind a Dairy Queen. A certified copy of the arrest affidavit for Girard's 2001 conviction for contributing to the delinquency of a minor indicated that Girard let a thirteen-year-old boy spend the night in his home, served the boy alcohol and gave him cigarettes.

The government argued that: (1) Caleb's online profile indicated that he was in a foster home and had been "bounced around, which signifies his vulnerability via an unstable home environment"; and (2) paragraphs 39 and 40 of the PSI, to

7

which Girard did not object, indicated that Girard had "possessed child pornography and contributed to the delinquency of a minor, who the Defendant even admitted, 'was having difficulties at home and at school.'" The government stated that its position was "that the Defendant is choosing these victims based upon their vulnerability, someone who doesn't have a stable home environment or is in a foster home and has a need or desire for affection and stability." The government asked the district court "to consider that portion of the United States Sentencing Guidelines, that Application Note 4, when fashioning a sentence." In addressing the § 3553(a) factors, the government noted Girard's criminal history of crimes against children and "the nature of this offense which seems to have graduated from his prior offenses" and argued that the public needed protection from Girard.

The district court found that an upward departure pursuant to U.S.S.G. § 3A1.1 was warranted because Girard's prior 2001 conviction (for contributing to a minor's delinquency) and the instant offense both involved the selection of a vulnerable victim. The district court described Girard's selection of vulnerable boys who were "lonely and in need of affection" as his "sort of modus operandi, if you will." As a result, the district court increased Girard's offense level by two levels to produce an advisory guidelines range of 135 to 168 months.

8

The district court next found that the need to protect the public from Girard warranted an upward variance. The district court stressed that Girard's offense was "extremely serious" and that Girard's conduct had "graduated" from his prior 2001 convictions. The district court noted that a program on Girard's computer was designed to erase or destroy images, which made it impossible for law enforcement to recover any incriminating evidence that may have been on Girard's computer. When the district court stated that Girard failed to register as a sex offender after his 2001 convictions, defense counsel interrupted and advised the court that Girard in fact had registered. The district court stated, "I stand corrected."

The district court said that "[t]here's no question in this Court's mind that [Girard is] a serious sex offender, and [Girard is] a danger to the public and our children." At this point, the district court expressed concern that Girard may have committed other acts, stating:

> The concern that I - - one concern I have is with this type of obsession - - and it's not reflected in the Presentence Report, but between 2001 and 2009, I have a very hard time believing there were not more acts committed. I certainly have a hard time believing that you were not possessing child pornography on [your] computer, particularly in light of the data encryption destruction, if you will, program that you had on your computer.
> In any event, the primary factors for the Court's variance in this case is the need for deterrence for you, Mr. Girard, as well as, most notably, the need to protect society from crimes of this nature.

9

The district court pointed out that although Girard's 2001 convictions "should have been enough of a message" to Girard, the instant offense "was even more aggravated" than his 2001 convictions, which suggested that Girard could not control himself.  The district court imposed concurrent 195-month sentences.

Girard filed this appeal.

## II.  DISCUSSION

### A.    Breach of the Plea Agreement

Girard argues that at sentencing the government breached the plea agreement by arguing that there were circumstances supporting both an upward departure and an upward variance.[3]

"The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty."  United States v. Horsfall, 552 F.3d 1275, 1281 (11th Cir. 2008) (quotation marks omitted).  "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea."  Id. (quotation marks omitted).  The government breaches a plea agreement when it

___

[3]We ordinarily review de novo whether the government breached a plea agreement, but apply plain error review where, as here, the defendant failed to raise the issue before the district court.  United States v. De La Garza, 516 F.3d 1266, 1269 (11th Cir. 2008).  To establish plain error, the defendant must show: (1) an error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affects the fairness and integrity or public reputation of judicial proceedings.  Id.; see also Puckett v. United States, 556 U.S. 129, ___ 129 S. Ct. 1423, 1432-33 (2009).

10

advocates a position incompatible with its promises in the agreement or makes a recommendation "which merely pa[ys] 'lip service' to the agreement." United States v. Taylor, 77 F.3d 368, 370-71 (11th Cir. 1996).

Here, the government promised not to recommend a specific sentence, but reserved the right to advise the district court of the circumstances of the offense and to argue the proper application of the guidelines and consideration of the 18 U.S.C. § 3553(a) factors. At sentencing, the government argued that an upward departure might be warranted under the commentary to U.S.S.G. § 3A1.1(b)(1) given that Girard's criminal history included a 2001 conviction for contributing to a minor's delinquency offense "that involved the selection of a vulnerable victim." See U.S.S.G. § 3A1.1(b)(1), cmt. n.4. The government also argued that a variance above the advisory guidelines range might be warranted based on various § 3553(a) factors, including Girard's criminal history, the nature and circumstances of his current offense and the need to protect the public from him. The government did not, however, request a specific sentence or suggest the extent to which the district court should impose either a departure or a variance. As such, the government's argument for the § 3A1.1(b) departure and an upward variance struck a balance between exercising its reserved right to argue for the proper

11

application of the guidelines and the proper consideration of the § 3553(a) factors and its obligation not to request a specific sentence.

Under the express terms of the plea agreement, it was not reasonable for Girard to expect the government to refrain from advocating for an upward departure authorized by the guidelines and supported by the PSI's undisputed facts or to expect the government not to emphasize those undisputed facts when addressing whether the § 3553(a) factors warranted a variance. Thus, Girard has not shown that the district court erred when it permitted the government to argue for an upward departure and an upward variance.

However, even if we assume arguendo that there was error, Girard did not object to the government's arguments in the district court and cannot show that any alleged error was plain. This Court has never addressed in a published opinion whether the precise language at issue in Girard's plea agreement precludes the government from advocating for an upward departure or variance, so long as the government does not request a specific sentence. Furthermore, our only published case addressing identical language in another plea agreement concluded that the government did not breach the plea agreement when it asked the district court to consider imposing consecutive sentences. See United States v. Thomas, 487 F.3d 1358, 1360-61 (11th Cir. 2007). Given the current law in this Circuit, we cannot

12

say any alleged error was plain.  See United States v. Chau, 426 F.3d 1318, 1322

(11th Cir. 2005) (explaining that for an error to be plain it must be "clear under

current law").[4]

## B.     Procedural Reasonableness

Girard argues that his 195-month sentence is procedurally unreasonable

because the district court based it on speculation, rather than reliable evidence, that

Girard had a "modus operandi" of targeting vulnerable boys from unstable homes

and engaged in other undetected crimes.[5]

The party challenging the sentence has the burden to show it is

unreasonable.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).  In

reviewing the procedural reasonableness of a sentence, we consider whether the

district court committed any significant procedural error, such as, inter alia,

selecting a sentence based on clearly erroneous facts.  Gall v. United States, 552

U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  A sentencing court's findings of fact may

be based upon evidence presented at trial, facts admitted by the defendant's guilty

---

[4]The cases Girard cites involved plea agreements with substantially different language, which makes them inapposite.  Most importantly, in none of these cases did the government reserve the right to present evidence and make arguments pertaining to the proper application of the guidelines or to the consideration of § 3553(a)'s sentencing factors.  See United States v. Johnson, 132 F.3d 628 (11th Cir. 1998); United States v. Taylor, 77 F.3d 368 (11th Cir. 1996); United States v. Rewis, 969 F.2d 985 (11th Cir. 1992).  Thus, these cases do not establish error that is plain.

[5]Girard does not argue that his sentence is substantively unreasonable.

13

plea, undisputed statements in the PSI or evidence presented at the sentencing hearing. United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004). A sentencing court's fact findings "cannot be based on speculation." United States v. Newman, 614 F.3d 1232, 1238 (11th Cir. 2010).

If the defendant challenges a factual basis for his sentence, the government must then prove those facts by a preponderance of the evidence. United States v. Liss, 265 F.3d 1220, 1230 (11th Cir. 2001). However, the defendant's challenge to the facts "must be asserted with specificity and clarity" to trigger the government's burden of proof. United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006). If the defendant does not object to the PSI's factual statements, they are deemed admitted for sentencing purposes, and the district court may rely upon them even in the absence of supporting evidence. United States v. Lopez-Garcia, 565 F.3d 1306, 1323 (11th Cir. 2009); United States v. Beckles, 565 F.3d 832, 843-44 (11th Cir. 2009).

Here, Girard did not carry his burden to show his sentence is procedurally unreasonable. Girard made no objection to the PSI's factual allegations regarding his 2001 convictions, thus admitting them for sentencing purposes. In addition, the government presented certified copies of Girard's 2001 convictions, the fictitious online profile for Caleb and Girard's online chat with who he thought was Caleb.

14

The district court's findings that Girard's criminal history demonstrated a pattern, or "modus operandi," of targeting lonely boys from troubled homes and that Girard's conduct escalated between the 2001 offenses and the instant offense were based on these undisputed facts and evidence, rather than speculation.

As for the district court's comment expressing concern that, given the computer software that destroys data, Girard may have committed other acts, a review of the district court's entire discussion of its reasons for imposing the upward variance suggests this was an offhand comment rather than a factual basis for the variance. Specifically, the district court primarily stressed the seriousness of Girard's current offense and that Girard had "graduated" from his earlier 2001 offenses. When the district court commented that it was hard to believe Girard had not possessed child pornography between 2001 and 2009, the court also acknowledged that the PSI did not reflect that Girard had committed any other acts during those eight years. The district court then stated, "In any event, the primary factors for the Court's variance in this case" was the need to deter Girard and protect the public. The district court then stressed that Girard's 2001 convictions did not deter him from committing the instant "even more aggravated" offense. In sum, when the challenged comment is read in context, we do not think it reflects a fact finding by the district court in support of the variance.

15

However, even assuming arguendo that the district court's comment was impermissible speculation, Girard never objected to it. As such, Girard is required to show error that is plain that affected his substantial rights, i.e., that the court's speculation "actually did make a difference" and that there was a reasonable probability that, absent the impermissible speculation, Girard would have received a lesser sentence. See United States v. Pantle, 637 F.3d 1172, 1177 (11th Cir. 2011) (explaining that if the effect of the error is uncertain, the defendant cannot show that it affected his substantial rights).[6]

Girard also claims that the district court's speculation "resulted in a substantially higher sentencing range." This argument lacks merit, too. The district court made the challenged comment after confirming the PSI's guidelines calculations and imposing the vulnerable victim upward departure.

---

[6]Ordinarily, if a defendant fails to object to a sentencing error before the district court, we review for plain error. See United States v. Castro, 455 F.3d 1249, 1251 (11th Cir. 2006). Although we have not yet done so in a published opinion, five other circuits have applied plain error review to procedural reasonableness claims raised for the first time on appeal. See, e.g., United States v. Mancera-Perez, 505 F.3d 1054, 1058 (10th Cir. 2007); United States v. Gilman, 478 F.3d 440, 447 (1st Cir. 2007); United States v. Bailey, 488 F.3d 363, 367-69 (6th Cir. 2007); United States v. Parker, 462 F.3d 273, 278 (3d Cir. 2006); United States v. Sylvester Norman Knows His Gun, III, 438 F.3d 913, 918 (9th Cir. 2006). As the Tenth Circuit explained, "the usual reasons for requiring a contemporaneous objection apply to challenges to the district court's method of arriving at a sentence. A timely objection to the method can alert the district court and opposing counsel, so that a potential error can be corrected, obviating any need for an appeal." United States v. Lopez-Flores, 444 F.3d 1218, 1221 (10th Cir. 2006); see also United States v. Sorondo, 845 F.2d 945, 948-49 (11th Cir. 1988) ("The purpose of the plain error rule is to enforce the requirement that parties object to errors at trial in a timely manner so as to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of reversal." (quotation marks omitted)).

16

For all of these reasons, Girard has not carried his burden to show prejudice with regard to the alleged speculation.

**AFFIRMED.**