[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15127
Non-Argument Calendar
_____

D.C. Docket No.  2:12-cr-14030-KMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALDO GONZALEZ,

Defendant-Appellant.


_____

No. 12-15128
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-14030-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE LUIS REYES,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(July 31, 2013)

Before TJOFLAT, PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Waldo Gonzalez and Jorge Luis Reyes[1] each appeal their total sentences of

120 months' imprisonment imposed after they pled guilty to conspiracy to pay

health care kickbacks, in violation of 18 U.S.C. § 371, and payment of health care

kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2)(B).  For the reasons set forth

below, we affirm Gonzalez's and Reyes's sentences.

I.

Reyes and Gonzalez pled guilty to conspiracy to pay health care kickbacks

and payment of health care kickbacks, pursuant to written plea agreements.  Their

convictions arose out of their ownership of W & J Rehabilitation Center ("W &

J").  Third parties known as "recruiters" recruited HIV-positive Medicare Part B

and Part C beneficiaries to visit W & J as patients.  During their visits to W & J,

---

[1] Gonzalez's appeal has been consolidated with Reyes's appeal, and we address the
issues that they raise in one opinion.

the purported patients signed papers attesting to the treatment purportedly provided to them.  Reyes and Gonzalez made cash payments to recruiters each time their patients visited the clinic and made cash payments to the HIV-positive patients they purported to treat.  Between 2005 and 2009, W & J submitted over $15 million in claims to Medicare and Medicare plan sponsors for the "purported treatment of AIDS and related conditions."

At sentencing, Enelys Ramos, who previously worked at W & J, testified that Reyes, in the presence of Gonzalez, spoke with Dr. Juan Julio Hernandez Pombo, a physician at W & J, about expanding the practice to include HIV-positive patients.  Reyes indicated that they would provide infusion treatments to HIV-positive patients, but that they were not actually going to give the patients medications, despite billing Medicare for the treatments.  After this conversation, individuals recruited HIV-positive patients and directed them to visit W & J.  Ramos further testified that, at times, Dr. Pombo ordered her to give HIV-positive patients injections and infusions of prescription drugs.  At Reyes's direction, Ramos administered injections of Vitamin B-12 and infusions of saline solution, as opposed to prescription drugs.  The clinic had prescription drugs in stock, but not enough to actually be administered as to all of the treatments ordered by Dr. Pombo.  At Reyes's direction, Ramos emptied the bottles of prescription medication and disposed of them.

3

Isaac Lloyd testified that he was HIV-positive, a Medicare beneficiary, and a former patient at W & J's Miami, Florida location. Lloyd suggested to Reyes and Gonzalez that they also open a clinic in Fort Pierce, Florida because numerous HIV-positive individuals lived there. Lloyd found a building in Fort Pierce where the clinic could operate, and W & J began operating there.

David Joel Nederhood, a pharmacology expert, testified that he had reviewed a sampling of W & J's Medicare billing data. He did not find a single instance where the clinic administered a medication for the proper diagnosis, at the proper frequency, and in the proper dose, all at the same time.

Gonzalez and Reyes made various factual objections to their presentence investigation reports ("PSIs"), and the court largely overruled their objections. Both Gonzalez and Reyes also argued that the court should not apply a 20-level increase to their offense levels under U.S.S.G. § 2B4.1(b)(1) because the loss amount involved in the offense did not exceed $7 million. The court noted that § 2B4.1(b)(1) provided that "if the greater of the value of the bribe or the improper benefit to be conferred exceeded $5,000 increase[] by the number of levels from the table in [U.S.S.G. §] 2B1.1." After examining the application notes to § 2B4.1 and U.S.S.G. § 2C1.1, the court noted that, under § 2B1.1, comment. (n.3), if the defendant was convicted of a federal health care offense involving a government health care program, the aggregate dollar amount of fraudulent bills submitted to

4

the government health care program constituted *prima facie* evidence of the amount of the intended loss.  The court determined that it was undisputed that W & J billed Medicare in excess of $7 million, and thus, the loss amount exceeded $7 million.

The court also determined that Gonzalez's and Reyes's offense levels should not be reduced for acceptance of responsibility under U.S.S.G. § 3E1.1.  Without acceptance-of-responsibility reductions, Gonzalez and Reyes each had a guideline range of 121 to 151 months' imprisonment.  However, as the statutory maximum was 5 years' imprisonment as to each count to which Gonzalez and Reyes pled guilty, their guideline sentences each became 120 months' imprisonment.

Both Gonzalez and Reyes requested that the court vary downward from their applicable guideline range.  The court determined that a downward variance was not warranted with respect to either defendant, and it sentenced Gonzalez and Reyes to total sentences of 120 months' imprisonment.

## II.

On appeal, both Gonzalez and Reyes challenge the district court's decision not to award them a three-level reduction in their offense levels for acceptance of responsibility, pursuant to § 3E1.1.  We review the district court's determination under § 3E1.1 for clear error.  *United States v. Moriarty*, 429 F.3d 1012, 1022 (11th Cir. 2005).  At sentencing, the district court's credibility determinations with

respect to witness testimony are afforded substantial deference, and we will not question the district court's credibility determinations absent some evidence to the contrary. *United States v. Pham*, 463 F.3d 1239, 1244 (11th Cir. 2006). Because the district court's determination regarding a defendant's acceptance of responsibility is entitled to great deference, we will not set aside the district court's decision that a defendant is not entitled to a downward reduction for acceptance of responsibility unless the record clearly establishes that the defendant accepted responsibility. *Moriarty*, 429 F.3d at 1022-23. The defendant bears the burden of clearly demonstrating acceptance of responsibility. *Id.* at 1023.

Under § 3E1.1(a), a defendant is entitled to a two-level reduction in his offense level where he clearly demonstrates his acceptance of responsibility. U.S.S.G. § 3E1.1(a). Although a guilty plea can constitute significant evidence of acceptance of responsibility, that evidence may be outweighed by conduct of the defendant that is inconsistent with an acceptance of responsibility. *Moriarty*, 429 F.3d at 1023. The commentary to § 3E1.1 sets out a non-exclusive list of factors a court may consider in determining whether a reduction for a defendant's acceptance of responsibility is warranted. U.S.S.G. § 3E1.1, comment. (n.1). These factors include, *inter alia*, whether the defendant truthfully admitted the conduct comprising the offense of conviction and truthfully admitted, as opposed to falsely denying, any additional relevant conduct. U.S.S.G. § 3E1.1, comment.

6

(n.1(A)).  The commentary also provides that, where a defendant falsely denies or frivolously contests relevant conduct that the court determines to be true, the defendant has acted in a manner inconsistent with acceptance of responsibility.  *Id.* Relevant conduct includes all acts and omissions committed by the defendant that occur during the commission of the offense of conviction or in preparation for that offense.  U.S.S.G. § 1B1.3(a)(1).  Where a court reduces a defendant's sentence for his acceptance of responsibility under § 3E1.1(a), the court may reduce the defendant's sentence by one additional level under § 3E1.1(b), where the government first files a motion providing, *inter alia*, that the defendant has assisted authorities in the investigation or prosecution of his own misconduct.  U.S.S.G. § 3E1.1(b).

## A.

Gonzalez argues that the entry of his guilty plea and admission of all facts relevant to support his convictions constituted significant and substantial evidence of his acceptance of responsibility, and in light of this evidence, the district court erred in denying him an adjustment for his acceptance of responsibility.  Gonzalez further argues that his objections at sentencing did not relate to the actual offenses of conviction.  Gonzalez also asserts that the testimony at sentencing supported his objection that he did not agree with others to not provide treatment to patients at W

& J, as the testimony showed that Gonzalez was "not present or not an active participant" in the discussions concerning the agreement.

The district court did not clearly err in declining to award Gonzalez a two-level reduction in his offense level for acceptance of responsibility. Gonzalez objected to the PSI's assertion that he was part of an agreement to not provide treatment to W & J's patients. As the district court determined, Ramos credibly testified that Reyes and Dr. Pombo agreed to bill Medicare for treatment that W & J had not actually provided and that Gonzalez was present for at least some of these conversations. Further, Ramos testified that, at Reyes's direction, she would administer infusions and injections that did not contain prescription medications, despite W & J billing the infusions and injections as if they did contain such medications. The district court did not clearly err in determining that Gonzalez was part of that agreement to commit Medicare fraud, as he was present during the conversation, was one of the owners of W & J, and benefited more than anyone due to the commission of the fraud, as he received over $1 million in proceeds. Thus, the district court was entitled to find that Gonzalez failed to truthfully admit his role in the Medicare scheme, and thereby denied his relevant conduct. *See* U.S.S.G. § 1B1.3(a)(1). Even if some of Gonzalez's objections at sentencing were well-founded, the record does not clearly establish that he accepted responsibility. *See Moriarty*, 429 F.3d at 1022-23. Because the court did not

8

clearly err in denying Gonzalez a reduction under § 3E1.1(a), a further one-level reduction was not proper under § 3E1.1(b). *See* U.S.S.G. § 3E1.1(b). Therefore, the district court did not clearly err in determining that an adjustment in Gonzalez's offense level under § 3E1.1(a), (b) was not warranted.

B.

Reyes argues that the district court erred in not reducing his sentence for his acceptance of responsibility because (1) the court failed to look at the factors set forth in § 3E1.1 and its application notes in determining that the reduction did not apply, and (2) the facts to which he objected were not relevant to the actual offenses to which he pled guilty. According to Reyes, Ramos's testimony was not credible. Although Ramos testified at sentencing that Reyes agreed with Dr. Pombo that no treatment would be given, this testimony was inconsistent with statements she had previously made and with unidentified "testimony of other government witnesses."

The district court did not clearly err in determining that a reduction in Reyes's offense level was not warranted for acceptance of responsibility. Although he pled guilty, the court could find that the evidence showing he accepted responsibility was outweighed by other conduct inconsistent with an acceptance of responsibility. *See Moriarty*, 429 F.3d at 1023. First, the court was entitled to find that, by objecting to statements in the PSI, Reyes falsely denied his

9

relevant conduct with respect to (1) his agreement to not provide treatment to HIV-positive patients, despite submitting claims to Medicare for treatment, and (2) his directing Ramos to not provide actual treatment to the patients. Ramos testified that Reyes agreed with others that no actual medications would be provided to the HIV-positive patients with respect to infusions and that Reyes directed Ramos not to provide prescription medications when she administered injections and infusions. Reyes did not show that Ramos's testimony was inconsistent with previous statements that she had made at sentencing, as he never introduced into evidence any previous inconsistent statements. Further, Reyes has not shown that Ramos's testimony was inconsistent with any other testimony at sentencing. Accordingly, we defer to the district court's determination that Ramos's testimony was credible. *See Pham*, 463 F.3d at 1244. Based on Ramos's testimony, the district court could find that Reyes falsely denied his relevant conduct as to the agreement not to provide treatment and directing Ramos in that regard.

The district court also was entitled to find that Reyes falsely denied his relevant conduct with respect to his role in the offense as compared to Lloyd's role. Lloyd testified that Reyes and Gonzalez were the "bosses" of the clinic, Lloyd had no control over W & J's bank account, and he had no authority over W & J's employees. Reyes and Gonzalez were already engaging in criminal activity at W

10

& J's Miami clinic when Lloyd suggested that W & J establish a clinic in Fort Pierce. Further, Reyes received almost $1 million in proceeds from the fraudulent scheme, and Reyes acknowledged that Lloyd did not receive "anywhere close to a million." Based on this evidence, the district court did not clearly err in determining that, contrary to Reyes's assertions, Lloyd was not the "mastermind" behind the offenses and had not enticed and manipulated Reyes into opening the Fort Pierce clinic. The district court therefore did not clearly err in finding that Reyes's plea of guilty was outweighed by his false denials of his relevant conduct, such that a reduction in his sentence for his acceptance of responsibility under § 3E1.1(a) was not warranted. Because the court did not clearly err in denying Reyes a reduction under § 3E1.1(a), a further reduction was not proper under § 3E1.1(b). *See* U.S.S.G. § 3E1.1(b). Accordingly, we affirm the district court's determination that Gonzalez and Reyes were not entitled to a three-level reduction in their offense levels, pursuant to § 3E1.1.

## III.

Both Gonzalez and Reyes challenge the district court's application of a 20-level increase to their offense levels, pursuant to § 2B4.1. Generally, we review the district court's determination under § 2B4.1(b)(1) for clear error. *United States v. Valladares*, 544 F.3d 1257, 1266 (11th Cir. 2008). We review a district court's interpretation of the Guidelines *de novo*. *United States v. Daniels*, 685 F.3d 1237,

11

1244 (11th Cir. 2012), *cert. denied*, 133 S.Ct. 1240 (2013).  However, we will not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights.  *United States v. Patterson*, 595 F.3d 1324, 1326 (11th Cir. 2010) (providing that plain error review applies to procedural-error arguments).  Where these three criteria are met, we may reverse for plain error if the error seriously affects the fairness, integrity, or public reputation of the court proceedings.  *Id.*  "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).  The plain error rule also applies when a defendant states an inaccurate objection, as opposed to no objection at all.  *United States v. Sorondo*, 845 F.2d 945, 949 (11th Cir. 1988); *see United States v. Gallo-Chamorro*, 48 F.3d 502, 507 (11th Cir. 1995) ("To preserve an issue for appeal, a general objection or an objection on other grounds will not suffice.").

Under § 2B4.1, a defendant's base offense level is enhanced, pursuant to the table set forth in § 2B1.1, if the "greater of the value of the bribe or the improper benefit to be conferred" exceeds $5,000.  *See* U.S.S.G. § 2B4.1(a), (b)(1)(B).  Under § 2B1.1, where the amount at issue exceeds $7 million, but is not more than $20 million, a defendant's offense level is increased by 20 levels.  U.S.S.G.

12

§ 2B1.1(b)(1)(K).  Where the amount at issue exceeds $2.5 million, but is not more than $7 million, a defendant's offense level is increased by 18 levels.  U.S.S.G. § 2B1.1(b)(1)(J).

The commentary to § 2B4.1 defines the "value of the improper benefit to be conferred" as the "value of the action to be taken or effected in return for the bribe" and cites generally to the commentary to § 2C1.1.  U.S.S.G. § 2B4.1, comment. (n.2) (quotation omitted).  Section 2C1.1, comment. (n.3) provides that the "loss to the government" under § 2C1.1(b)(2)—which applies to offenses involving bribery with respect to public officials—shall be determined in accordance with § 2B1.1, comment. (n.3).  U.S.S.G. § 2C1.1, comment. (n.3).

Section 2B1.1, comment. (n.3) defines "loss" as the greater of "actual" loss or "intended" loss.  U.S.S.G. § 2B1.1, comment (n.3(A)).  "Actual loss" is defined as the reasonably foreseeable pecuniary harm that resulted from the offense, and "intended loss" is defined as the pecuniary harm that was intended to result from the offense, including pecuniary harm that would have been impossible or unlikely to occur.  *Id.*  Where a defendant is convicted of a "Federal health care offense"[2] involving a governmental health care program, a special rule applies to the loss-amount determination.  U.S.S.G. § 2B1.1, comment. (n.3(F)(viii)) (quotation omitted).  Specifically, "the aggregate dollar amount of fraudulent bills submitted

---

[2]  A "Federal health care offense" includes a violation of § 1320a-7b.  *See* U.S.S.G. § 2B1.1, comment. (n.1); 18 U.S.C. § 24(a)(1).

to the Government health care program shall constitute prima facie evidence of the amount of the intended loss, *i.e.*, is evidence sufficient to establish the amount of the intended loss, if not rebutted." *Id.* In *Valladares*, a prosecution under several statutes, including §§ 371 and 1320a-7b, we determined that, through a scheme to submit fraudulent claims to Medicare, the defendant caused a $2.7 million loss to Medicare, and that amount was properly considered by the court in applying an 18-level enhancement under § 2B4.1(b) because it was part of the defendant's relevant conduct. 544 F.3d at 1261, 1266-67.

## A.

Gonzalez argues that the district court erred because it improperly used the fraud-loss-amount standard in increasing his offense level under § 2B4.1(b), rather than determining the "value of the kickback or the improper benefit from the kickback." Gonzalez further argues that the loss amount is irrelevant to the Guidelines pertaining to offenses involving the payment of health care kickbacks, as the amount of loss involved in an offense is not mentioned as a specific offense characteristic under § 2B4.1(b). Gonzalez also argues that the plain language of § 2B4.1 required the district court to determine the value of the bribe or the net value of the improper benefit. According to Gonzalez, because the court failed to calculate the proper value under § 2B4.1, his sentence should be vacated and his case remanded for resentencing.

14

Plain error review applies to Gonzalez's argument on appeal. Gonzalez never argued at sentencing that "loss" was irrelevant to the determination under § 2B4.1 or that the court was applying an incorrect legal standard. Assuming, *arguendo*, that the district court erred in basing its determination under § 2B4.1(b) on the intended loss to Medicare and the Medicare plan sponsors, Gonzalez cannot show that the error was plain. Neither our Court nor the Supreme Court have explicitly addressed whether a district court may use the loss to the victim to determine the "value of the bribe or the improper benefit to be conferred," at least where the loss is to the government. Thus, any error as to this issue cannot be plain. *See Lejarde-Rada*, 319 F.3d at 1291. Moreover, we previously have affirmed a sentence in which the district court applied a § 2B4.1 increase based on a loss of $2.7 million to Medicare. *See Valladares*, 544 F.3d at 1261, 1266-67. Although we did not specifically address the question of whether a loss amount is the proper standard for a court's sentencing calculation under § 2B4.1(b) in *Valladares*, our decision illustrates that any error that occurred in this case was not plain. *See United States v. Gandy*, 710 F.3d 1234, 1240 (11th Cir. 2013) (providing that a plain error is an error that is obvious and clear under current law). Thus, Gonzalez has not shown that the court plainly erred in applying a 20-level increase to his offense level under § 2B4.1(b).

15

B.

Reyes argues that, to determine the loss amount under § 2B4.1(b), any treatment W & J actually provided should be deducted from the loss amount, but, here, the loss amount cannot be determined because the district court never determined the amount of treatment W & J actually provided.  Reyes argues that W & J provided treatment of value because, although Ramos testified at sentencing that Reyes agreed with Dr. Pombo that no treatment would be given, this testimony was inconsistent with statements she had previously made and with other testimony at sentencing.

The district court did not clearly err when it determined that the government proved that the loss to Medicare exceeded $7 million.[3]  *See* U.S.S.G. § 2B1.1(b)(1)(J), (b)(1)(K).  Although Lloyd testified that he received antibiotics and prescriptions at W & J when he was ill or had an infection, this does not show that the court clearly erred with respect to its loss determination.  Further, even assuming that Lloyd's testimony establishes that W & J provided at least some actual treatment to its HIV-positive patients, his testimony does not show that the court clearly erred in finding that W & J submitted at least $7 million in fraudulent claims.  Ramos testified that W & J did not provide any actual treatment by way of

---

[3]  Reyes does not challenge on appeal the district court's use of a loss-amount standard to make the sentencing determination under § 2B4.1(b).  Thus, we do not address this issue as it applies to Reyes.  *See United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998) (finding that a defendant had abandoned an issue when he failed to raise the issue on appeal).  In any event, no plain error occurred in this respect, as discussed above.

infusions and injections, and that that she emptied the bottles of prescription medication that W & J had in stock. As discussed above, we afford substantial deference to the court's credibility finding with respect to Ramos's testimony. Additionally, although Nederhood did not review all of the claims that W & J submitted, he did not find a single instance in the records he reviewed where W & J provided the appropriate drug for the diagnosis, administered the correct dosage, and administered the dosage at the correct frequency. Based on Ramos's and Nederhood's testimony, the district court could conclude that at least $7 million of the over $15 million in claims submitted to Medicare and the plan sponsors were fraudulent, even considering Lloyd's testimony. *See United States v. Hoffman-Vaile*, 568 F.3d 1335, 1337, 1344 (11th Cir. 2009) (determining, in a Medicare fraud case, that any error in failing to offset loss amounts with actual surgeries performed was harmless where the evidence supported a finding of the required threshold amount even after accounting for any offsets). Thus, the district court did not clearly err in determining that the amount of fraudulent claims exceeded $7 million, such that a 20-level increase applied to Reyes's offense level, pursuant to § 2B4.1(b)(1). Accordingly, we affirm the district court's application of a 20-level increase to Gonzalez's and Reyes's offense levels under § 2B4.1(b).

IV.

Both Gonzalez and Reyes challenge the reasonableness of their sentences. We review the reasonableness of a sentence under a deferential abuse of discretion standard. *See Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). A district court's sentence need not be the most appropriate one, but rather need only be a reasonable one. *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (*en banc*). We may set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable. *Id.* The party challenging the sentence has the burden of establishing that the sentence was unreasonable based on the record and the factors set forth in 18 U.S.C. § 3553(a). *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). Further, we ordinarily expect a sentence imposed with the applicable guideline range to be reasonable. *Id.*

In reviewing the reasonableness of a sentence, we first consider whether the district court committed a procedural error, such as improperly calculating the applicable guideline range. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. After we have determined that a sentence is procedurally sound, we review a sentence's substantive reasonableness by examining the totality of the circumstances, which includes an inquiry into whether the § 3553(a) factors support the sentence in question. *United States v. Gonzales*, 550 F.3d 1319, 1323-24 (11th Cir. 2008).

18

The district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a).  In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1), (3)-(7).  We do not substitute our own judgment for that of the district court in weighing the relevant sentencing factors absent a clear error of judgment.  *See United States v. Early*, 686 F.3d 1219, 1223 (11th Cir. 2012).

## A.

Gonzalez argues that the district court imposed an unreasonable sentence because it sentenced him to the statutory maximum, despite his lack of criminal history and the absence of any aggravating circumstances.  According to Gonzalez, the court failed to acknowledge that he was a first-time offender and that he closed his clinic and ceased all of his illegal activity before being arrested or indicted. Gonzalez contends that the court lacked any valid reason for sentencing him to the

statutory maximum, and thus, it unreasonably weighed the § 3553(a) factors.  He also argues that the court impermissibly considered his Cuban alienage and did not acknowledge the fact that he was a U.S. citizen at the time he was sentenced.

Here, Gonzalez's sentence is procedurally reasonable, as the court correctly calculated the guideline range, and he raises no other argument as to why his sentence is procedurally unreasonable.  *See Cunningham*, 161 F.3d at 1344.  Next, Gonzalez's total sentence of 120 months' imprisonment, which was also his guideline sentence and the statutory maximum, is substantively reasonable.  As Gonzalez's sentence is a guideline sentence, we expect this sentence to be reasonable.  *See Talley*, 431 F.3d at 788.  The record demonstrates that the district court considered the § 3553(a) factors in imposing the total sentence, and Gonzalez has not demonstrated that his sentence is unreasonable based on those factors.

In considering Gonzalez's history and characteristics, the court found it significant that he entered into the United States illegally and then proceeded to commit crimes against the U.S. government.  Although Gonzalez argues that the court sentenced him based on his Cuban alienage, a review of the record shows that this is not the case.  The court did not mention Gonzalez's Cuban alienage, but rather Gonzalez's attorney noted that Gonzalez entered into the United States illegally "with some kind of agreement with the Cuban Government."  Next, the court also stated that it considered the PSI, which provided that Gonzalez had no

criminal history and was a naturalized U.S. citizen.  *Cf. United States v. Ghertler*, 605 F.3d 1256, 1262 (11th Cir. 2010) (providing that a court is not required to articulate its consideration of each individual § 3553(a) factor).

The district court also considered the seriousness of the offense, which occurred over an extended period of time and involved multiple individuals, millions of dollars, and "siphoning money from the [Medicare] program that could otherwise be going to the people that truly need it."  Although Gonzalez argues that he and Reyes closed W & J prior to being arrested and charged, they only closed W & J after being arrested on state charges related to the instant offense. Further, although Gonzalez argues that the statutory maximum sentence was not appropriate based on his history and characteristics, the court was permitted to find that other § 3553(a) factors, such as the seriousness of the offense and his "utter contempt for the law," outweighed his lack of a criminal history.  Based on the seriousness of the offense and the prevalence of fraud in South Florida, the court also found that "anything other" than the statutory maximum penalty would send the "wrong signal" to others who believed that they could commit similar offenses and not suffer a serious penalty.  We do not substitute our own judgment for that of the district court in weighing the relevant sentencing factors absent a clear error of judgment, which Gonzalez had not shown here.  *See Early*, 686 F.3d at 1223. Thus, Gonzalez has not shown that the district court's decision to impose a total

21

sentence of 120 months' imprisonment was unreasonable.

### B.

Reyes argues that the district court imposed a substantively unreasonable sentence because it impermissibly considered the fact that he entered into the United States illegally. Reyes further argues that the court, in sentencing him, (1) should not have considered that fraud frequently occurred in South Florida and other parts of the country and (2) did not consider his personal history, which was set forth in several character letters submitted to the court. Reyes contends that the court failed to properly consider the nature and circumstances of the offense because the court did not compare Reyes's role in the offense to Lloyd's greater role in the offense. Reyes also asserts that Ramos was given full immunity for her cooperation with the government. Reyes contends that the court found that Reyes's actions resulted in others who needed Medicare funding not receiving such funding, but that the government never proved that Reyes's actions had this result. Reyes argues that a sentence lower than his guideline sentence would have been sufficient to deter similar conduct and promote adequate respect for the law and that his motion for a variance should have been granted.

Reyes's sentence is reasonable regardless of whether his arguments concern substantive reasonableness only or both procedural and substantive reasonableness. In considering Reyes's history and characteristics, the court found it significant

22

that Reyes entered into the United States illegally and then proceeded to commit crimes against the U.S. government.  A district court judge "may not impose a more severe sentence than he would have otherwise based on unfounded assumptions regarding an individual's immigration status or on his personal views of immigration policy."  *United States v. Velasquez*, 524 F.3d 1248, 1252-53 (11th Cir. 2008) (vacating sentence for supervised-release violation, on the ground that the sentence had been based "entirely" on improper considerations).  Here, in considering Reyes's history and characteristics, the district court judge properly considered—as one of many considerations—the fact that Reyes entered into the United States illegally and did not base Reyes's sentence on unfounded assumptions regarding Reyes's immigration status or on the judge's personal views of immigration policy.

Further, the district court also properly considered that fraud similar to the fraud Reyes committed occurred frequently in South Florida because individuals often believed that they could commit fraud without receiving punishment.  The court's comments illustrated that it was considering the need to promote respect for the law and deter others from committing similar acts of fraud in the future, as part of the court's consideration of the § 3553(a) factors.  *See* 18 U.S.C. § 3553(a)(2)(A)-(B).  The district court did not rely on an impermissible factor in this respect.

23

Next, Reyes's total sentence of 120 months' imprisonment, which was also his guideline sentence and the statutory maximum sentence, is substantively reasonable. Reyes's sentence, like Gonzalez's sentence, is a guideline sentence, and we expect this sentence to be reasonable. *See Talley*, 431 F.3d at 788. The record demonstrates that the district court considered the § 3553(a) factors in imposing the total sentence, and Reyes has not demonstrated that his total sentence is unreasonable based on those factors. As discussed above with respect to Gonzalez, the court properly considered the appellants' history and characteristics and the seriousness of the instant offense. By showing that Reyes committed fraud by submitting claims to Medicare for treatment that was not actually provided, the government proved that Medicare funds were not being used as intended.

Next, the court also considered Reyes's argument that a variance was warranted due to Lloyd's role in the offense. As discussed above, the evidence supports the court's determination that Reyes's role in the offense was greater than Lloyd's role. The court properly considered Reyes's role in the offense as a leader who received significant proceeds from the offense. Further, Reyes has not shown any unwarranted disparity between himself and Lloyd and Ramos, as he is not similarly situated to Lloyd and Ramos. *See* 18 U.S.C. § 3553(a)(6). Lloyd and Ramos both cooperated with the government, had not been prosecuted or convicted of any conduct, and had not been sentenced. *See United States v. Spoerke*, 568

24

F.3d 1236, 1252 (11th Cir. 2009) (providing that defendant was not similarly situated to another individual because that individual was never prosecuted or convicted of any conduct and not sentenced).  Thus, no unwarranted disparity exists in this case.

Although Reyes submitted character letters to the court, the district court was not required to specifically articulate its consideration of those letters.  *Cf. Ghertler*, 605 F.3d at 1262.  To the extent Reyes argues that the court should have placed more weight on the mitigating value of the letters he submitted to the court, the court was permitted to find that other § 3553(a) factors, such as the seriousness of the offense and his "utter contempt for the law," outweighed any mitigating value the letters may have had.   We do not substitute our own judgment for that of the district court in weighing the relevant sentencing factors absent a clear error of judgment, which Reyes has not shown here.  *See Early*, 686 F.3d at 1223.  Thus, Reyes has not shown that the district court's decision to impose a total sentence of 120 months' imprisonment was unreasonable.  Accordingly, Gonzalez and Reyes have not shown that the court imposed unreasonable sentences.

For the foregoing reasons, we affirm Gonzalez's and Reyes's sentences.

**AFFIRMED.**